

**SO ORDERED: November 10, 2015.**

Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ATLAS RED-D MIX, INC. ) | CASE NO. 15-4854-RLM-7A |
| ) | |
| Debtor ) | |

### ORDER GRANTING MOTION TO DISMISS

The debtor's largest, and essentially only, creditor alleges that the debtor filed this chapter 7 case in bad faith and that it should be dismissed. For the reasons stated below, the court agrees and grants the creditor's motion.

### *Background*

The undisputed facts are as follows. Atlas Red-D Mix, Inc. (the "debtor") is an Indiana corporation that operated a ready mix concrete business beginning in 1961. The debtor was a contributing employer to Central States, Southeast and Southwest Areas Pension Fund (the "Fund"), a multiemployer pension plan governed by the

1

ERISA.[1]  Diana Daoust ("Diana") inherited all of the stock of debtor upon the death of her husband, who was the debtor's president and sole shareholder.  Diana has not worked in the debtor's business either prior to or since her husband's death.  The debtor was current on all Fund obligations while it operated its business.  The debtor ceased all business operations on May 3, 2013 and completely withdrew from the Fund, incurring withdrawal liability of $3,585,173.15.  The Fund sent the debtor a notice and demand for payment.  The debtor had two options: (1) request a review (2) dispute the amount of the withdrawal liability and initiate arbitration.  It chose neither of these options.

The Fund sued the debtor in the United States District Court for the Northern District of Illinois (the "District Court") on August 4, 2014 after the debtor failed to pay the withdrawal liability.  The debtor admitted all facts relating to the withdrawal liability but in the same pleading contended that the Fund was not entitled to relief, asserting the affirmative defense that the withdrawal liability violated the Fifth Amendment.  The District Court promptly entered an order striking that defense with prejudice, calling it "totally without merit".

In December, 2014, the debtor informed the Fund's attorney that it might be willing to enter into a consent judgment.  The debtor wanted the proposed consent judgment drafted by the Fund to provide that the Fund would stay execution of any judgment until April 13, 2015. The Fund did not agree to this provision and consequently moved for summary judgment on January 12, 2015.  The debtor transferred one of the four real estate parcels it owned to an allegedly disinterested party on January 23, 2015.

Thereafter, debtor waited until the day after the response deadline for the summary judgment motion and indicated it would not be responding to the motion.  On February 20, 2015, the District Court entered judgment for the Fund in the amount of $4,400,373.11 (the "Judgment").  The debtor did not appeal the Judgment.  The Fund proceeded to collect the Judgment under Illinois law and served its Citation in Supplemental Proceedings to Discover Assets (the "Citation") on the debtor through its registered agent, Sarah Dauost-Keyton on March 17, 2015 at 5:25 p.m.  At the time,

---

[1] Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §1001, et seq.

2

Keyton resided in Noblesville, Indiana. The Citation summoned the debtor, through Keyton, to appear on May 14, 2015 at the Fund's offices in Rosemont, Illinois to answer questions as to its assets and to produce certain documents by April 17, 2015. The Citation provided, in part, as follows:

> YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from enforcement of a judgment, a deduction order or garnishment, belonging to the judgment debtor or to which he or she or it may be entitled or which may hereafter be acquired by or become due to him or her or it, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until further order of the Court or the termination of the proceeding, whichever occurs first.

Debtor resisted the Order to produce documents to the Fund and to have a representative appear for interrogation. Debtor's counsel waited until the date the deposition was to have occurred to file a motion to quash the order to appear and to produce documents contained in the Citation, which was after the Fund had filed a motion to show cause for failure to obey the Citation. On March 19, 2015, two days after the Fund served the Citation on the debtor, the debtor transferred two more of its real estate parcels to allegedly disinterested persons. In April 2015, the debtor paid its attorneys $11,000. The debtor's motion to quash was heard and denied on May 18, 2015 and the debtor was ordered to produce documents by June 1, 2015 and to appear for deposition on June 22, 2015. The debtor moved to extend the document production deadline on May 27, 2015, arguing in part that it could not pay to ship the documents because the Citation prohibited the debtor from transferring assets. The District Court granted the debtor an additional week, June 8th, to produce the documents, but ordered that they would be produced at the debtor's cost. On June 1, 2015, the debtor transferred a fourth parcel to Diana's son for $10,500. The debtor filed its chapter 7 case on June 4, 2015. The Fund was scheduled as the only creditor, and its claim of $4,410,087.64 was listed on Schedule F as not "disputed".

### *Discussion*
### *"Bad Faith" as a Cause for Dismissal under §707(a)*

The Fund moves to dismiss this case under §707(a). That section provides that

3

> (a) the court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) Nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

The use in paragraph (a) of the phrase "for cause, including" makes it clear that the three technical and procedural infirmities constituting "cause" in this section are not exhaustive of what could constitute "cause" to dismiss a case. *In re Pedigo*, 329 B.R. 47, 48 (S. D Ind. 2005). Prior to the enactment of BAPCPA, a debtor's bad faith in filing a chapter 7 – although neither a technical nor a procedural cause - was "cause" to dismiss a case under §707(a). *Id.* at 49. BAPCPA substantially amended §707(b) regarding consumer debtors and expressly provided that the court shall consider "whether the debtor filed the petition in bad faith" in determining whether the granting of relief would be an abuse of the provisions of chapter 7. §707(b)(3)(A). With no parallel BAPCPA amendment adding the phrase "bad faith" to §707(a) - which applies to both consumer and non-consumer debtors – some courts within the Seventh Circuit have held that, after BAPCPA, consideration of a debtor's "bad faith" is permissible only under §707(b) and not §707(a). *In re Adolph*, 441 B.R. 909, 911(Bankr. N. D. Ill. 2011*).* Recently, the Seventh Circuit Court of Appeals has held that "cause" under §707(a) need not be limited to procedural deficiencies. Rather, a bankruptcy court has discretion to dismiss a case under §707(a) when the debtor "avoids repayment of debt without an adequate reason", even if the debtor's conduct amounts to something short of "bad faith". *In re Schwartz,* 799 F.3d 760, 763 (7th Cir. 2015); *In re Isaacson*, 2015 WL 6701788 (N.D. Ill. November 2, 2015). A majority of courts post-BAPCPA have held that "bad faith" continues to be a "cause" for dismissal under §707(a). *In re Perlin*, 497

F.3d 364, 369 (3rd Cir. 2007); *In re Tallman*, 417 B.R. 568, 575 (N.D. Ind. 2009).[2] The debtor here does not contend otherwise, and therefore the Court will consider whether the debtor filed the chapter 7 case in bad faith.

The "totality of circumstances" test continues to be used to determine bad faith under §707(a). *Tallman*, 417 at 575-76.[3]  Among the factors that apply to corporate debtors are whether (1) the case was filed in response to a judgment; (2) there is an intent to avoid a large, single debt; (3) the debtor transferred assets; and (4) the debtor employed a deliberate and persistent pattern of evading a single major creditor.  The overarching inquiry is whether "the bankruptcy code is being used properly" or whether the bankruptcy case implicates "any of the policies underlying the chapter in which the debtor seeks protection".  *In re American Telecom Corp.,* 304 B.R. 867, 869 (Bankr. N. D. Ill. 2004) *aff'd*, *American Telecom Corp. v. Siemens Information and Communications Network, Inc.*, 2005 WL 5705113 at *3 (N.D. Ill. September 7, 2005); see also, *In re Ripley & Hill, P.A.,* 176 B.R. 596, 598 (Bankr. M.D. Fla. 1994). Despite the nefarious connotation of "bad faith", malfeasance is not a prerequisite to "bad faith*". American Telecom*, 304 B.R. at 869.

---

[2] *Perlin* and *Tallman* involved individual chapter 7 debtors.  One of the arguments in cases holding to the contrary and in favor of limiting "bad faith" dismissals to §707(b) is that "the  Code specifically addresses the misconduct of debtors elsewhere" such as in §523 and thus there is no reason to read a "bad faith" cause in §707(a) where it does not expressly exist.  *Adolph*, 441 B.R. at 912.  That may be true for individual, consumer debtors where certain debts can be found to be excepted from discharge under §523.  But that reasoning does not apply to corporate debtors that do not receive a discharge under §727(a)(1) and to whom the §523 exceptions from discharge do not apply.  Thus, there is an even greater need for bad faith filing to be a "cause" under §707(a) in corporate chapter 7 cases.

[3] The factors considered under the "totality of the circumstances" test include whether: (1) the debtor reduced his creditors to a single creditor shortly before the petition date; (2) the debtor made no life-style adjustments or continued living a lavish life-style; (3) the debtor filed the case in response to a judgment, pending litigation, or collection action; (4) there is an intent to avoid a large, single debt; (5) the debtor made no effort to repay his debts; (6) the unfairness of the use of Chapter 7; (7) the debtor has sufficient resources to pay his debts; (8) the debtor is paying debts of insiders; (9) the debtor's schedules inflate expenses to disguise financial well-being; (10) the debtor transferred assets; (11) the debtor is over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of creditors; (12) the debtor employed a deliberate and persistent pattern of evading a single major creditor; (13) the debtor failed to make candid and full disclosure; (14) the debtor's debts are modest in relation to his assets and income; and (15) there are multiple bankruptcy filings or other procedural "gymnastics." *Piazza v. Nueterra Healthcare Physical Therapy, LLC.*, 469 B.R. 388, 392 (S.D. Fla. 2012).  See also, *In re Snyder*, 509 B.R. 945, 952 (Bankr. D. N. M. 2014).

The debtor had been out of business for more than two years when it filed its case.  The debtor ceased business because its principal passed away, not because it could not pay its bills.  It was current on its Fund obligations while it was in business.  Its only scheduled debt when it filed its petition was the Judgment and it was not scheduled as "disputed".  It amended its schedules twice to add creditors, and both amendments were filed after the Fund moved to dismiss its case.   Granted, the Fund wasted no time in moving to dismiss this case a mere 15 days after it was filed, but the creditors added hold either *de minimus* or suspect claims.  The first creditor added allegedly has a claim of $535 for an NFS check that resulted when the Fund froze the debtor's bank account.  The creditors added in the second amendment (relatives of Diane) allegedly hold a $1,012,500 unperfected security interest in the debtor's assets arising from a 2004 deferred compensation agreement, but Diane testified at the §341 meeting of creditors that the claim was entirely contingent upon the continued operation of the debtor's business.  This debt was scheduled as "disputed" and contingent".  The Judgment is the debtor's only bona fide claim and there can be no honest dispute that the debtor filed its bankruptcy case to avoid the Judgment and in response to the Fund's collection efforts.

The debtor never substantively denied its liability to the Fund.  Debtor's efforts have been to delay the entry of judgment and to leverage control of the liquidation of the debtor to a venue more convenient to debtor.  Despite debtor's stated concern with running afoul of the prohibition against transferring assets by paying shipping costs, the debtor has transferred over $11,000 in fees to its attorneys and divested itself of all of its real property through four transfers.  All of the real estate transfers were made after the Fund filed its complaint, and three of the four transfers were made after the Citation was issued.  Whether the transfers were made for reasonably equivalent value is of no relevance; the Citation prohibited all transfers of nonexempt assets without regard to whether the transferees gave sufficient consideration.  The debtor's conduct in the District Court demonstrates that its primary reason for filing the bankruptcy case was to thwart the Fund's collection of the Judgment and control the venue of the debtor's liquidation.  While *Schwartz* allows conduct less than "bad faith" to be "cause" for dismissal under §707(a), the Court here has no reluctance in finding that the debtor in fact engaged in "bad faith" when it transferred 4 parcels of property after the Fund sued

it, with the last transfer to a relative of the debtor's insider occurring just days before it filed its chapter 7 case.

Finally, there is no legitimate bankruptcy purpose to be served here.  The debtor, a corporation, will not receive a discharge, so the "fresh start" a discharge gives to individual debtors does not apply here.  See, *American Telecom*, 304 B.R. at 869. (corporate chapter 7 cases "do not implicate the fresh-start considerations underlying nearly every other type of bankruptcy case").  The only legitimate purpose of a corporate chapter 7 bankruptcy case is "the fair and orderly liquidation of corporate assets to creditors".  *Id.* at 370; *Siemens Information* at *3.  Given the little property it has, the debtor does not need a bankruptcy forum to liquidate and distribute its assets or wind down its affairs.  It has only one legitimate creditor who holds a final judgment that has not been appealed.  The debtor cannot argue that this bankruptcy is necessary to preserve its claims which it has a fair chance of winning on appeal.  See, *In re Dilling*, 322 B.R. 353, 361 (Bankr. N. D. Ill. 2005) (court did not dismiss chapter 7 case of elderly debtor against whom judgment was taken for acts committed by son, finding that it was "not unreasonable" that the debtor's appeal would succeed and that debtor's financial status quo should be preserved by allowing the case to proceed).  The four real estate transfers may be subject to avoidance and recovery by the chapter 7 trustee, but the only parties sharing in recovery would be the chapter 7 trustee and the Fund. The Fund can just as well seek to avoid those transfers in state court.   The chapter 7 filing here bears no "discernable relationship to any true bankruptcy policies"; the case was filed as a litigation tactic to avoid the Judgment and the jurisdiction of the Illinois District Court.  See, *Siemens Information* at *4.  There is no legitimate bankruptcy purpose to be served as the case here is essentially a two-party dispute that can proceed in the District Court.  For these reasons, the Fund's motion is granted and the case is dismissed with prejudice.

# # #